563 So.2d 773 (1990)
George A. GRIFFITHS, Appellant,
v.
Carol L. GRIFFITHS, Appellee.
No. 88-3034.
District Court of Appeal of Florida, Third District.
June 19, 1990.
*774 Michael E. Cox, Key Largo, for appellant.
Russell H. Cullen, Key Largo, for appellee.
Before HUBBART, FERGUSON and COPE, JJ.
PER CURIAM.
George A. Griffiths appeals a final judgment of dissolution of marriage, contending that the trial court erred in the distribution of the parties' assets. We affirm the dissolution of marriage, but reverse and remand for further proceedings with respect to the property awards.
The husband's first issue on appeal is the distribution of the funds in his pension plan. The parties were married in 1983. This was a second marriage for the husband, who at the time of this marriage had been employed as a commercial pilot for sixteen years and had a preexisting pension plan with his employer. The instant marriage lasted for five years. During that time, the husband continued to be employed and his employer continued to make contributions to the pension plan. There were accumulations on the pension plan throughout the period of the marriage. In the final judgment the trial court considered that all contributions and accumulations to the pension plan during the marriage were marital property.
The husband correctly contends that, at least as a beginning point for analysis, the approach followed by the trial court was erroneous. In Diffenderfer v. Diffenderfer, 491 So.2d 265 (Fla. 1986), the Florida Supreme Court said, "`To the extent that they [pension plan rights] result from employment time after marriage and before commencement of a matrimonial action, they are contract rights of value, received in lieu of higher compensation which would otherwise have enhanced either marital assets or the marital standard of living and, therefore, are marital property.'" Id. at 267 (citation omitted). Under Diffenderfer, pension plan contributions during the course of the marriage, and accumulations thereon, are marital property. As a corollary, the pension plan balance prior to the marriage, and accumulations thereon, are the separate property of the employee. See Zaborowski v. Zaborowski, 547 So.2d 1296 (Fla. 5th DCA 1989); Fredel v. Fredel, 531 So.2d 981, 982 (Fla. 3d DCA 1988), review denied, 542 So.2d 988 (Fla. 1989). The trial court therefore erred in treating all accumulations during the marriage as being marital property since a portion of the accumulations during the marriage were attributable to the amount already contained in the pension plan prior to the date of the marriage. Accordingly, there must be a recalculation of the portion of the pension plan which can be properly deemed to be marital property. In reversing, however, we add two caveats. First, in reducing the award to the wife from this source, the trial court has full authority to readjust any or all of the remaining property and support awards to the wife so as to be sure that the wife receives equitable treatment. See Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980). Second, Diffenderfer also authorizes in some circumstances the utilization of pension benefits in achieving equitable treatment of the parties, where there is no other alternative. See 491 So.2d at 268-70.
The husband next contends that the trial court erred in the special equity amount it awarded him with respect to the marital home. While we agree that there was error in the computation, we do not agree with the husband's interpretation of Landay v. Landay, 429 So.2d 1197 (Fla. 1983).
During the husband's first marriage, he and the previous Mrs. Griffiths purchased a vacant lot in Key Largo. For present purposes we will consider that the cost of the lot was $48,000, which was the figure chosen by the wife for purposes of her *775 written closing argument.[1] The husband and the former Mrs. Griffiths financed the purchase of the lot through a second mortgage loan on their then marital residence. When the husband and the former Mrs. Griffiths dissolved their marriage, the husband was granted the vacant lot and was also given the responsibility to pay off the second mortgage loan. At the time the husband and the appellee wife married in 1983, the loan balance was $42,000.
The vacant lot was used for the construction of the husband and appellee wife's marital residence. During the instant marriage, marital funds were used to reduce the related mortgage loan balance to $20,021.30, at which time the husband paid off the remaining mortgage balance with separate, non-marital funds of his own.
Because the vacant lot was technically free and clear when brought into the marriage, the husband maintains that he is entitled to a special equity for the $48,000 acquisition price. That is plainly incorrect. Assuming a $48,000 value at the time the property was brought into the marriage and a $42,000 indebtedness associated with that property, the husband initially would be entitled only to special equity to the extent of the equity in the property: $6,000. When he used non-marital funds to pay off the $20,021.30 mortgage balance, he was entitled to another claim of special equity, for a total of $26,021.30. He was not entitled to claim special equity to the extent of the $48,000.
The parties also disagree about the proper method of computation of the husband's special equity under Landay. Landay contemplates that special equity will be translated into a percentage which can be applied to the sale price or imputed value of the home. The underlying rationale is that the spouse contributing the special equity should also receive the related appreciation thereon and not merely a return of the original special equity.[2] The correct approach is, in our view, reflected in Donaldson v. Donaldson, 481 So.2d 101, 102 (Fla. 2d DCA 1986).[3]
We assume for purposes of this discussion that the acquisition cost of the marital home was $208,740.16 including costs of land and construction.[4] We value the husband's contribution at $26,021 and use the fair market value of $240,000 at the time of dissolution for purposes of this computation. The husband's share would be computed as follows:

 Husband's Portion
 50% + (1/2 X H's separate contribution)
 ( acquisition cost )
 50% + (1/2 X $26,021)
 ( $208,740)
 50% + (6%) = 56%
 56% X $240,000 = $134,400
 Less 1/2 of mortgage - $ 56,500
 ________
 $ 77,900
 Wife's Portion
 44% X $240,000 = $105,600
 Less 1/2 of mortgage - $ 56,500
 ________
 $ 49,100
 Husband's Special Equity
 $77,900 - $49,100 = $ 28,800

*776 While the trial court employed slightly different methodology, it appears that such error as was made was actually in the husband's favor. On remand there should be a recalculation, which will partially offset the reduction in the wife's share of the pension benefits.[5]
The husband also contends that insofar as the trial court makes an award of pension fund monies, the judgment must be modified in order to enter a qualified domestic relations order. See 26 U.S.C. § 414 (p). The wife has confessed error on that point.
The husband next claims that the trial court erred in ordering sale of the marital residence. As the wife had requested partition, the trial court had discretion to so order. See Jones v. Jones, 527 So.2d 244, 245 (Fla. 3d DCA), review denied, 536 So.2d 244 (Fla. 1988); § 64.071(1), Fla. Stat. (1989). The wife concedes, however, that the final judgment must be amended to delete an erroneous reference to foreclosure.
We have considered the other points on appeal and conclude that no reversible error has been shown.
Affirmed in part, reversed in part, and remanded for further proceedings consistent herewith.
NOTES
[1] There is an internal inconsistency in the wife's figures, which will be addressed subsequently.
[2] Likewise, if there is a sale at a loss, the special equity would bear its pro rata share.
[3] We decline to follow Neustein v. Neustein, 503 So.2d 439 (Fla. 4th DCA 1987).
[4] This figure is derived from the wife's presentation in written closing argument, although it contains an internal inconsistency. According to the wife's position, the total construction amounts were $163,740.16. Taking that figure as correct, the difference would be $45,000, not $48,000, as the value of the lot.
[5] The trial court is free to resolve the inconsistency in the foregoing figures and otherwise make such adjustments as may be appropriate.