THOMPSON, J.
Susan Brown Taaffe (“former wife”) appeals the final judgment of dissolution of marriage.
The former wife contends that the court erred in calculating her special equity in the marital home. Before the marriage, the former wife bought a home referred to as the “Rosemont home.” After the marriage, the parties lived in the Rosement home until 1991, when the parties purchased the marital home for $110,000. The former wife testified that there had been $39,254.47 in equity in the Rosemont home. Of the $39,254.47, she testified, $30,000 was used for the deposit on the marital home, and the $9,254.47 balance was spent on improvements to the marital home. According to the former wife, an additional $30,000 was spent on improvements in 1991. The former wife testified that her mother loaned the parties the $30,000 spent on the improvements and that the former wife and the former husband signed a promissory note for the loan. In 1997, the former wife testified, she used $30,000 from her inheritance to make additional improvements to the marital home.
The former wife contends that the court erred in arriving at her special equity because it failed to give her credit for the 1997 investment of $30,000 from her inheritance, and because it miscalculated the special equities formula. In Landay v. Landay, 429 So.2d 1197 (Fla.1983), the court held that the correct formula for *1203 determining a special equity could be stated thus:
in addition to that spouse’s automatic one-half share, the contributing spouse acquires a special equity in the property equal to one-half the ratio which that spouse’s contribution bears to the entire consideration.
Id. at 1200. The court stated that the percentage approach was fair because the contributing spouse had made a capital investment and deserved an enhanced interest in the property and should be permitted to reap any fruits of the investment. Id. at 1199. The simplicity and fairness of the formula lie in the fact that situations of both appreciation and depreciation are adequately covered. Id.
We must first point out that the trial court mistakenly credited the former wife with an extra $10,000 in connection with the initial 1991 contribution to the house. The court found that the former wife had made a down payment of $39,000 on the marital home with non-marital funds (i.e. the equity in the Rosemont home) and that she had invested $40,000 to improve the marital home using non-marital funds, for a total of $79,000. This was incorrect. The former wife made a down payment of $80,000 rather than $39,000. The former wife’s testimony was that with the $39,254.47 derived from the sale of the Rosemont home, she made a down payment of $30,000 on the marital home, and used the balance of the equity, or $9,254.47, for immediate improvements. During the trial, counsel had rounded up the $9,254.47 to $10,000 and may have inadvertently given the court the impression that there was an investment of $10,000 in addition to the funds derived from the sale of the Rosemont house and the loan from the mother.
Furthermore, the former wife is not entitled to the credit she was given for the 1991 improvements worth $30,000 because the former wife testified that these improvements were made with the $30,000 loan to the parties made by the former wife’s mother. A loan creates a marital debt and does not give rise to a special equity merely because one of the spouses is related to the lender. See Martinez v. Martinez, 573 So.2d 37 (Fla. 1st DCA 1990) (citing McCarthy v. McCarthy, 528 So.2d 97 (Fla. 2d DCA 1988)) (“trial court abused its discretion in finding a special equity in favor of the wife based on a loan the wife’s mother made to the couple jointly”); Howard v. Howard, 310 So.2d 430 (Fla. 4th DCA 1975) (“if the trial court determines that the loan from the wife’s parents was made to the parties jointly, then the prayer for a special equity should be denied”); Portuondo v. Portuondo, 570 So.2d 1338 (Fla. 3d DCA 1990). The former wife testified that she was executor of her mother’s estate and sole heir, but that does not give her a special equity either. Landay explains that special equities are awarded to give the donating spouses the benefit of their investments. Since the wife did not invest $30,000 in non-marital funds in the 1991 improvements, she is not entitled to a special equity in connection with that investment.
The trial court gave the former wife a credit for $79,000 in contributions made in 1991, but that figure must be reduced by the extra $10,000 mistakenly given and the $30,000 representing the loan proceeds. The former wife claims that she made improvements in 1997 with $30,000 she inherited and that the court erred in failing to take this into account. The former husband suggests that the court did not believe the former wife’s testimony on this issue because she did not provide any documentation of the alleged investment. We have no way of knowing whether the former husband is correct, or *1204 whether the omission was an oversight. On remand, the court should make a finding on this question. We note that the burden of proof is on the person claiming the special equity. § 60.075(5)(a)5., Fla. Stat.
Because we do not know if the omission of the 1997 alleged investment was an oversight, we cannot calculate the parties’ respective interests. We point out, however, that in applying the Landay formula, the “total consideration” is the cost of the marital home, plus any improvements. If the trial court believes that improvements were made in 1991 and 1997, the “total consideration” paid for the marital home is $110,000, plus the 1991 improvements worth $9,254.47 (funded by the former wife) and $80,000 (funded by the loan proceeds). Although the former wife is not entitled to credit for the 1991 investment of $30,000 because the funds were derived from a loan, it still represents part of the acquisition cost and must be added to the $110,000 sale price of the home. If the court finds that additional improvements were made in 1997, the value of the improvements should be added to arrive at the “total consideration.” If the court believes that any 1997 investment was made with the former wife’s separate funds, then the amount should be included when calculating the former wife’s special equity. We would also point out that the percentage interests of the parties should be applied to the market value of the home at the time of dissolution. See, e.g., Romano v. Romano, 632 So.2d 207, 212 (Fla. 4th DCA 1994); Griffiths v. Griffiths, 563 So.2d 773, 775 (Fla. 3d DCA 1990); Donaldson v. Donaldson, 481 So.2d 101, 102 (Fla. 2d DCA 1986). It appears that the trial court incorrectly applied these percentages to the net equity, i.e., the value of the home less the mortgage indebtedness.
Accordingly, we reverse the final judgment and remand for a determination of the former wife’s special equity and for any necessary re-distribution of marital assets. We find no abuse of discretion with respect to the other matters raised by the former wife, see Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980), and affirm the final judgment in all other respects.
AFFIRMED in part; REVERSED and REMANDED with instructions.
SAWAYA, C.J., and TORPY, J., concur.